CAROLINE E. CONDICT

*v.*

STEPHEN A. CONDICT et al.

[Submitted July 18th, 1907. Decided July 26th, 1907.]

1. By his will a testator gave and devised the residue of his estate to his executors in trust: *"Fourth.*—After the death of my wife I authorize and empower my surviving executors to sell any and all of my land and property that may remain to the best advantage, and out of the proceeds of such sale to pay off any bonded indebtedness on my homestead and Market street property, if any remains, and when such indebtedness is all paid off and discharged, then I dispose of the residue and remainder of my estate as follows:" (indicating the manner in which the same was to be disposed). Upon a bill filed by one of the testator's children beneficially interested in his residuary estate, after the payment of all his indebtedness, seeking partition of the testator's lands still undisposed of, and which were unencumbered, claiming that the complainant was a tenant in common of the legal estate and entitled to an undivided part thereof— *Held,* that the power of sale still exists; that it extends to the whole of the real estate and all the undivided interest therein, and that the complainant had no standing in court to call for a partition.

2. The complainant cannot elect to take her share *in specie,* and so in effect cancel the power of sale created by the will, the rule being that a power of sale will not be defeated by one or more, less than the whole number of beneficiaries, to the prejudice of any of them.

---

On bill for partition. On final hearing, on bill, answer, replication and proofs.

*Mr. Francis Child,* for the complainant.

*Mr. William T. Carter, Jr.,* for the defendants.

Howell, V. C.

This is a bill for partition filed by Caroline E. Condict, one of the five children of Stephen H. Condict, now deceased, who died November 1st, 1895.

Mr. Condict, at his death, left him surviving his widow and five children, and he also left a will, which was admitted to probate in the county of Essex, of which the following are the portions important for the consideration of this case:

"*Third.* I give, devise and bequeath all the remainder of my estate, real and personal, to my executors hereinafter named and to the survivor or survivors of them in trust, as follows: To hold the same during the life of my wife, she to have the use of my homestead in Park Place, together with the use of the furniture, household goods, etc., as long as she desires to occupy said house, with sufficient income from my estate (and such amount as she may see fit to contribute) to support the house and family, all taxes, repairs, insurance, water rates, etc., to be paid out of my estate, and any surplus income to be applied to the reduction of any bonded indebtedness that may be on my homestead or Market street property. I also authorize and empower my executors or the survivor of them to sell any of my real estate with the consent of my wife and to apply the receipts from such sale to the reduction of any bonded indebtedness that may be upon my homestead and upon my Market street property.

"*Fourth.* After the death of my wife I authorize and empower my surviving executors to sell any and all of my landed property that may remain to the best advantage, and out of the proceeds of such sale to pay off any bonded indebtedness on my homestead and Market street property if any remains, and when such indebtedness is all paid off and discharged, then I dispose of the residue and remainder of my estate as follows:

"*Fifth.* I give and bequeath the one equal fifth part of such residue (less the money advanced to my son, Frederick K. Condict, as shown on my ledger on pages 144 and 145, which sum so shown is to be first deducted) to my executors, in trust, to invest and keep invested said share of one-fifth of my estate and to pay over the income arising from the same as follows: The one equal fourth part of such income to my son, Frederick K. Condict, and the remaining three-fourth parts of said income to pay over to his wife, Mary N. Condict, as trustee, for the use of herself and her children by said Frederick K. Condict for their maintenance, the principal sum of said one-fifth share of my estate to be paid to the children of said Frederick K. Condict and Mary N. Condict in equal shares at any time after they severally arrive at the age of twenty-one years if she sees fit to so have it paid over, and in case of her death the payment and disbursement of said three-fourths of the income is committed to my executors as trustees in her place and stead. And on the death of both Frederick K. Condict and Mary N. Condict said prin-

cipal sum (if not already divided among their children) shall be divided among said children in equal shares when they shall severally attain the age of twenty-one years.

"*Sixth.* I give and bequeath the one equal fifth part of such residue (less the money advanced to my son, Stephen A. Condict, as shown on my ledger on pages 130 and 131, which sum so shown is to be first deducted) to my son, Stephen A. Condict, in trust, for his children, he to have the income thereof until all of his children attain the age of twenty-one years, at which time the said Stephen A. Condict is to have the option of equally dividing said principal sum among his children then living, if such division then seems desirable to him, said trustee, however, to have the use of the income until such division is made.

"*Seventh.* I give and bequeath the one equal fifth part of such residue to my son-in-law, William T. Carter, in trust, for the use of his wife, Sophia A. Carter, and her children, as long as she lives and after her death, the same to be divided equally among her children then living, with the option on the part of said Sophia A. Carter, of dividing said principal sum equally among her said children on arriving at the age of twenty-one years.

"*Eighth.* I give and bequeath to my daughter, Caroline E. Condict, and to my daughter, Sarah Frances Condict, each the one equal fifth part of said residue absolutely.

"*Ninth.* I authorize and empower the several trustees named in this my will to safely invest and re-invest the several sums herein bequeathed, and to change the investments from time to time as circumstances in their judgment may demand."

The testator's two sons and his daughter, Mrs. Carter, have children; all the parties in interest are of age except Kenneth K. Carter, a son of Mrs. Carter, who is twelve years old.

The evidence shows that the testator at the time of his death was largely in debt, his real estate being encumbered by mortgages and some of his personal property pledged as security for the payment of promissory notes.

During the lifetime of the widow the executors and trustees disposed of the homestead property, and were able, by careful management, to pay off all the indebtedness of the testator and leave the real estate described in the bill entirely unencumbered.

The testator's widow died on September 13th, 1901, and the estate, now being ready for distribution, Caroline E. Condict, one of the devisees, files her bill seeking partition of the lands of which the testator died seized, which are still undisposed of, upon the theory that she is a tenant in common of the legal estate and entitled to an undivided one-fifth part thereof. She

alleges that the executors and trustees named in the will claim that by virtue of the will and their appointment they have the power to sell and convey the premises in question, and she alleges that there is doubt whether, upon a proper construction of the will, the executors have such power, and she says that it would be impossible to make advantageous sale of the property or to divide the same among the parties by conveyances from the executors unless their authority is determined and declared by the decree of this court.

All the other parties in interest have answered. Their answer admits all the material allegations of the bill, and admits that there is doubt about the power of the executors and trustees therein named to make sale of the real estate, and they join in the prayer of the bill that this court may decree whether the executors have such power or not.

On the argument the question submitted was whether the power of sale still exists in the executors and trustees, it being conceded by both sides that if the power does exist the bill for partition should be dismissed.

I think it is quite apparent that the testator intended the power of sale, created in paragraph 4 of the will, to be a general and continuing power and not limited to the one purpose of raising money with which to clear the estate of indebtedness.

It will be observed that the legal title to the land is not vested by the will in the children and ultimate beneficiaries, but is vested in the executors and trustees. They are not given a mere naked power, but are created active trustees, and they evidently have been hitherto so considered by everyone interested in the estate. The executors have conducted the affairs and business of the estate without objection, and with the consent of the widow; and in her lifetime sold a sufficient amount of the real estate of the deceased to discharge all the indebtedness, and they did discharge it out of the proceeds of such sales.

The legal title being so vested in the trustees there is no method by which they may divest themselves thereof except by a conveyance or by a decree of this court determining and ending the trust.

A similar case is found in *Cruikshank* v. *Parker, 51 N. J. Eq.*

(*6 Dick.*) *21;* reversed by the court of errors and appeals in *52 N. J. Eq.* (*7 Dick.*) *310.* In that case there were two trusts —*first,* that the trustees sell, dispose of and convey the residuary estate at public or private sale, in their discretion, and *second,* that they divide the real and personal estate into four equal shares, one for each of the testator's daughters, and to convey, pay and assign three of such shares to three of his daughters absolutely, and to hold as trustees the remaining fourth share, deducting therefrom what was probably an advancement of nearly $50,000, and pay the income thereof to the fourth daughter during her life and at her death to her issue absolutely.

It will be seen that the facts in the *Cruikshank Case* are almost on all-fours with the facts in the case at bar, and the court there held that the power of sale continued even after the division into the four shares which the will had provided for, and it specifically enforced the performance of an agreement between the trustees and the purchaser for the sale of a portion of the share set aside in trust for the fourth daughter.

A similar question was before the court under the same will in the case of *Story* v. *Palmer,* *46 N. J. Eq.* (*1 Dick.*) *1.* That was a bill for partition, and was based upon the theory that the ultimate devisees had the right to elect to take the land instead of the proceeds of the sale thereof.

The chancellor determined that the trust under the will was an active one and contemplated that the executors should exercise their discretion in regard to the sale and disposition of the property, and that a partition would defeat that intention, and to that extent override the will and the trust which it had created.

We must attempt to ascertain the intention of the testator in construing the will and follow that intention in the administration of the estate. I think that the double power of sale contained in the will is conclusive of the intention of the testator. By the third paragraph of the will he devised his whole estate to trustees to hold the same during the lifetime of his wife for her support and the support of the family, and authorized the executors to sell real estate with the widow's consent and apply the proceeds to the reduction of his debts.

Evidently the testator had in mind the plan of keeping his estate together during the lifetime of his widow, and did not desire that any of the real estate should be sold without her consent or for any purpose except to reduce the bonded indebtedness which might be upon his homestead and Market street properties; and it seems probable that during the lifetime of his wife he meant that no more of the estate should be sold than was necessary to pay the debts and so preserve the property *in specie* so far as was possible, and, therefore, that up to the date of her death the power of sale was limited to this one purpose, but after her death (fourth paragraph) the executors were authorized to sell all his landed property that might then remain, not for the limited purpose of paying the bonded indebtedness, but generally to realize thereon, with the direction that any remainder of indebtedness should be paid "out of the proceeds" of such sale, and with the intention that the executors and trustees should divide among the beneficiaries not the lands themselves but the proceeds of the sale which they were so authorized to make. This power of sale is not limited to any particular time nor for any particular purpose. It is general and unlimited and quite necessary to carry out the scheme of settlement that the testator had in mind. The executors may, but not till after the death of his wife, sell all his landed property and "out of the proceeds" of the sale pay the bonded indebtedness, if any should remain, and when such debts should have been paid he couples his real and personal estate together as one divisible whole and disposes of it as such, but, manifestly, the division was intended by him to be made by the executors and trustees who held the legal title to the whole of the real and personal estate. In other words, the testator contemplated the conversion of his whole estate into cash or its equivalent, and a distribution thereof to be made by the executors.

Again, it will be observed that in the provision made in the fifth and sixth paragraphs for the benefit of his sons he charges up against their fifth shares, respectively, the moneys advanced to his sons, as shown on his ledger. In the ordinary administration of the estate these deductions cannot be made unless the property shall have been first sold, because they must be made

not from the property itself, which would be an impossibility, but from the proceeds of the sale; and this is made still more prominent by the provisions of the ninth paragraph of the will, where the trustees are directed to safely invest and re-invest the several sums bequeathed by the will and to change the investments from time to time, as circumstances may demand—a provision which cannot be carried out unless the trustees shall first have realized upon the property and by a sale have created the several sums therein mentioned; in short, this ninth paragraph contemplates that the second set of trustees shall take money or securities, and not the land which the original executors and trustees have the title to and management of. It would be well-nigh impossible to realize upon these three undivided trusteed shares, and at the same time give the complainant and her sister their shares *in specie.* To attempt such an administration of the powers declared in this will would create endless confusion and lead to a sacrifice of the shares realized upon. The testator was a prominent and well-known business man, who had long been a resident of Newark, and a large owner of real estate. It can hardly be supposed that he had in mind any such course of administration as is above indicated.

This court had to deal with this question in the matter of the will of John Tonnele in the two cases of *Bacot* v. *Wetmore, 17 N. J. Eq. (2 C. E. Gr.) 250,* and *Wetmore* v. *Midmer, 21 N. J. Eq. (6 C. E. Gr.) 242.* There the question was whether a general power of sale extended to lands which the testator had devised to his son for life, as well as to land embraced in certain trusts, and it was *held* that the general power of sale attached to the whole estate, and that the power prevailed over all the devises. The complainant in this suit is in the same situation with the life tenant under the Tonnele will. She takes her share absolutely, it is true, but it is subject to the power of sale. *Rudderow* v. *Nield, 27 N. J. Eq. (12 C. E. Gr.) 89; affirmed, 28 N. J. Eq. (1 Stew.) 274; Morse* v. *Hackensack Savings Bank, 47 N. J. Eq. (2 Dick.) 279.*

The complainant cannot elect to take her share *in specie* and so in effect cancel the power of sale created by the will. The rule is well settled that a power of sale will not be defeated by

one or more, less than the whole number of beneficiaries, to the prejudice of any of them. If all were *sui juris* and should elect to take the land, the power might be defeated by their unanimous action, but in the case at bar one of the contingent beneficiaries, a son of Mrs. Carter, is not of age. He cannot elect, and there is no one authorized to elect for him. *Fluke* v. *Fluke, 16 N. J. Eq. (1 C. E. Gr.) 478; . Bolton* v. *Stretch, 30 N. J. Eq. (3 Stew.) 536; Cronan* v. *Coll, 69 N. J. Eq. (3 Robb.) 694.* Nor does it appear that any of the other beneficiaries have in any manner signified their desire to take land instead of the proceeds of the sale thereof; in fact, they seem, by their answer, to stand upon their rights as the court may ascertain them from the will.

I therefore conclude that the power of sale still exists; that it extends to the whole of the real estate and all the undivided interests therein, and that the complainant has no standing in court to call for a partition. The bill must, therefore, be dismissed.